**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PATRICK HICKMAN,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>KENNETH MEAD, *et al.*,<br><br>　　　　　　Defendants. | Case No.: 2:18-cv-00404-GMN-NJK<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss, (ECF No. 23), filed by Defendant Jessica Walsh ("Walsh"). Plaintiff Patrick Hickman ("Plaintiff")[1] filed a Response, (ECF No. 31), and Walsh did not file a reply.

Also pending before the Court is the Motion for Judgment on the Pleadings, (ECF No. 84), filed by Defendant Kenneth Mead ("Mead"). Plaintiff filed a Response, (ECF No. 90), and Mead filed a Reply, (ECF No. 93).

For the reasons addressed below, the Court **GRANTS** Walsh's Motion to Dismiss and **GRANTS** Mead's Motion for Judgment on the Pleadings.

### I. BACKGROUND

This case arises from Plaintiff's arrest and subsequent criminal proceedings in Nevada state court. In May 2013, Plaintiff issued a check on his closed Wells Fargo bank account as an installment payment for his pre-existing mortgage debt. (Am. Compl. ¶ 6, ECF No. 19). Shortly thereafter, Defendant Kenneth Mead ("Mead"), a police officer with the Las Vegas Metropolitan Police Department ("LVMPD"), obtained a federal grand jury subpoena to

---

[1] In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

investigate Plaintiff's account records. (*Id.* ¶¶ 4, 7). Based upon what he discovered, Mead submitted a declaration in support of a warrant for Plaintiff's arrest. (*Id.* ¶ 7). In September 2014, Defendant Walsh, Chief Deputy District Attorney, filed a criminal complaint under seal, charging Plaintiff with violation of NRS 205.0832, Nevada's consolidated theft statute. (*Id.* ¶ 8). In 2015, the Clark County Sheriff's office sent Plaintiff a letter, notifying him that his concealed weapons permit had been revoked in light of the warrant for his arrest. (*Id.* ¶ 9).

Plaintiff's attorney filed a motion with the Las Vegas Justice Court to have his warrant recalled, which the presiding judge denied. (*Id.* ¶¶ 10–11). Plaintiff alleges that during the hearing, the Deputy District Attorney Christopher Hamner represented to the judge that "this is the sovereign case." (*Id.* ¶ 11). Plaintiff was subsequently handcuffed, taken into custody, and subject to a $10,000.00 surety bond. (*Id.*).

Once in custody, Plaintiff alleges he was booked, searched, injected with a "TB" shot, and given a mouth swab for his DNA. (*Id.* ¶ 12). Plaintiff further alleges he was questioned about his military background and given no privacy with respect to using the restroom. (*Id.*). According to Plaintiff, he was held overnight despite his bail being posted the same day he was booked. (*Id.*). On August 7, 2015, Plaintiff claims he was released from custody, given an inoperable card to replace the cash removed from his person upon booking, and rebuffed with respect to his request to use the phone for a ride home. (*Id.* ¶ 13).

Plaintiff's preliminary hearing, scheduled for August 20, 2015, was continued upon Plaintiff's motion. (*Id.* ¶ 14). During the next seven months, Plaintiff and attorneys for the State of Nevada moved for several continuances while they unsuccessfully negotiated a plea agreement. (*Id.*). On March 8, 2016, the Justice Court dismissed charges against Plaintiff and ordered his bail be forfeited. (*Id.* ¶ 16).

In February 2018, Plaintiff contacted the Justice Court, and later the LVMPD, requesting copies of the documents associated with his now-dismissed criminal case. (*Id.* ¶ 17). The

Justice Court clerk advised that the court did not have a copy of Mead's declaration in support of his warrant application. (*Id.*). LVMPD provided Plaintiff's case report but neglected to supply the Mead declaration. (*Id.*).

At the time of Plaintiff's arrest, Plaintiff alleges he was able to obtain a copy of Mead's declaration without the associated warrant. (*Id.*). The declaration allegedly identifies Plaintiff as a "sovereign," who is associated with other "sovereigns." (*Id.* ¶ 18). Plaintiff further alleges Mead applied to several other arrest warrants for individuals who had tendered checks on delinquent bank accounts. (*Id.*).

Plaintiff filed the instant Amended Complaint on August 3, 2018, bringing the following causes of action against Mead and Walsh for their role in obtaining charges against and prosecuting Plaintiff: (1) malicious prosecution under 42 U.S.C. § 1983; (2) section 1983 equal protection; (3) section 1983 presumption of access; (4) state law malicious prosecution; and (5) respondeat superior liability against Mead. (*Id.* ¶¶ 19–43).

## II. <u>LEGAL STANDARD</u>

### A. 12(b)(6)—Dismissal

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a Ruling on a Rule 12(b)(6) motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Syst., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B. 12(c)—Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Similar to a motion under 12(b)(6), a 12(c) motion requires the court to "accept all factual allegations in the complaint as true and construe them in the light most favorable to

the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

## III. DISCUSSION

### A. Motion to Dismiss

Walsh moves to dismiss on the basis that, as a prosecutor, she has absolute immunity, thereby barring Plaintiff's claims against her. (Defs.' Mot. to Dismiss ("MTD") 2:15–19, ECF No. 23). Plaintiff responds that absolute immunity does not apply in cases, like the case at bar, where a prosecutor is sued in her individual capacity. (Pl.'s Resp. to MTD ("Resp.") 4:19–5:15, ECF No. 31).

A prosecuting attorney is entitled to absolute immunity from a civil rights action for damages when she performs a function that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Genzler v. Longanbach*, 410 F. 3d 630, 636 (9th Cir. 2005). Absolute immunity extends to a prosecutor's conduct in "pursuing a criminal prosecution" providing she does so within her role as an "advocate for the State." *Imbler*, 424 U.S. at 410, 430–31. However, "absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in . . . investigative or administrative tasks." *Van De Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 430, 431 n.33). In those instances, only qualified immunity is available. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). To determine whether a prosecutor's action is protected by absolute immunity, the Court looks to "'the nature of the function performed,

not the identity of the actor who performed it.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (quoting *Kalina v. Fletcher,* 522 U.S. 118, 127 (1997)).

The Court turns to Plaintiff's Amended Complaint to ascertain whether the allegations against Walsh arise from duties for which she enjoys immunity. Plaintiff alleges Walsh filed a criminal complaint against him under seal, charging Plaintiff with attempted theft, despite having "no legitimate expectation for a conviction." (Am. Compl. ¶¶ 5, 21). Walsh also allegedly used her "official position[]" to "initiate criminal proceedings without probable cause," and by sealing relevant court documents, Walsh deprived Plaintiff and the general public of access. (*Id.* ¶ 33).

To the extent Walsh performed functions outside of her role as officer of the court, the Amended Complaint is silent as to those functions. The substantive allegations that identify Walsh's participation include Walsh's filing of the criminal complaint against Plaintiff, as well as her efforts to seal pertinent court documents. These actions are squarely within the "traditional roles as an advocate," rather than that of an investigator or administrator. *Kalina*, 522 U.S. at 131; *Buckley*, 509 U.S. at 273. In any event, the limited, bare allegations identifying Walsh's conduct fail to satisfy the Court that she personally participated in Plaintiff's alleged constitutional deprivation. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation . . . .").

Plaintiff argues that because he sues Walsh in her individual capacity, the defense of absolute immunity is generally inapplicable. (Resp. 4:19–5:16). Contrary to Plaintiff's position, his Amended Complaint states in the caption, prayer for relief, and within the substantive allegations, that Walsh "is being sued in her official capacity." (*See* Am. Compl. ¶¶ 5, 43(e), (i)). Moreover, Plaintiff misapprehends the distinction between § 1983 individual-capacity suits, where immunity defense *are* available, and official-capacity suits, which are

treated as suits against the entity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses . . . . In an official-capacity action, these defenses are unavailable.").

Insofar as Plaintiff intended to sue Walsh in her official capacity, the Amended Complaint fails to allege the necessary elements of a *Monell* claim. "[A]n official capacity suit against a municipal officer is equivalent to a suit against the entity. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Graham*, 473 U.S. at 165–66). "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). To prevail on a § 1983 claim against a governmental entity, a plaintiff must prove: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Id.*

The only allegation in the Amended Complaint supporting *Monell* liability is expressly asserted against Mead: "LVMPD has a custom practice and policy to facilitate its employee's attempts to maliciously prosecute individuals who hold certain ideologies, and/or hold particular affiliations with others," that "LVMPD employees find undesirable." (Am. Compl. ¶ 42). This alleged policy, according to Plaintiff, was promulgated by LVMPD rather than Walsh's employer, Clark County. Because Clark County has no role or authority with respect to LVMPD, "Clark County cannot be held liable for [their] actions or policies." *Bowie v. Lombardo*, No. 2:18-cv-00686-GMN-PAL, 2019 WL 720974, at *4 (D. Nev. Feb. 20, 2019) (collecting cases).

In summary, because Plaintiff's allegations supporting his claims against Walsh are intertwined with her prosecution of the underlying criminal case, Walsh is entitled to absolute immunity from this suit. To the extent Plaintiff intended to sue Walsh as a vehicle to assert a *Monell* claim, the elements of such a claim are not pleaded and cannot be premised upon policies implemented by LVMPD.

**B. Motion for Judgment on the Pleadings**

Mead contends Plaintiff's Complaint must be dismissed in its entirety because Mead had probable cause to submit a declaration of warrant for Plaintiff's arrest. (Mot. for J. 4:10–9:7, ECF No. 84). Alternatively, Mead asserts that he is shielded from liability by qualified immunity or else immunity under *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981). (*Id.* 9:8–12:24). Finally, Mead argues that Plaintiff's constitutional claims are not cognizable claims as a matter of law. (*Id.* 13:1–17:2).

*1) Malicious Prosecution*

To state a claim for malicious prosecution under Nevada law, a plaintiff must show that: (1) the defendants lacked probable cause to initiate the prosecution; (2) the defendants acted with malice; (3) the prior criminal proceedings were terminated in plaintiff's favor; and (4) the plaintiff suffered damages. *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). A malicious prosecution claim under § 1983 additionally requires the plaintiff to show that the defendants acted with the intent to deprive the plaintiff of a constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions may be brought against prosecutors or "against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). A plaintiff "must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *Id.* at 1068.

Mead argues that Plaintiff cannot state a claim for malicious prosecution because: (1) probable cause supported the arrest warrant; (2) the dismissal of the underlying criminal case does not constitute a termination in Plaintiff's favor; and (3) even if Mead obtained the warrant based upon a misapprehension of law, he is nevertheless entitled to qualified immunity. (Mot. for J. 4:10–18:2).

### a. Probable Cause

"Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). In the malicious prosecution context, the probable cause element is properly determined by the court. *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997) (citing *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 510 (Cal. 1989)).

Mead obtained a warrant for Plaintiff's arrest based upon attempted theft under NRS 205.0832, which provides that "a person commits theft if, without lawful authority," the person knowingly

> obtains real, personal or intangible property or the services of another person by a material misrepresentation with intent to deprive that person of the property or services. As used in this paragraph, "material misrepresentation" means the use of any pretense, or the making of any promise, representation or statement of present, past or future fact which is fraudulent and which, when used or made, is instrumental in causing the wrongful control or transfer of property or services. The pretense may be verbal or it may be a physical act.

NRS 205.0832(c). The conduct proscribed by this statute "constitutes a single offense embracing the separate offenses commonly known as larceny, receiving or possessing stolen property, embezzlement, obtaining property by false pretenses, issuing a check without sufficient money or credit, and other similar offenses." NRS 205.0833. "An act done with the

intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime." NRS 193.330.

Mead's declaration of warrant states that upon investigation, Mead learned that in May of 2013, Bank of America received a "false lien payoff misrepresentation in connection with a loan" associated with real property in the form of a personal check for $105,000.00. (Decl. Warrant, Ex. A to Am. Compl., ECF No. 19-1). The check identifies Plaintiff, the address of the real property for which Plaintiff obtained a loan, and contains the words "For Discharge of Debt, EFT Only," on the memo line. (*Id.*). A federal grand jury subpoena revealed Plaintiff's ownership of the Wells Fargo account and that Plaintiff closed the account ten months prior to sending Bank of America the $105,000.00 check. (*Id.*).

Plaintiff's Amended Complaint does not contest the veracity of these underlying facts. (*See* Am. Compl. ¶ 6, ECF No. 19) ("On or about May 1, 2013, Plaintiff issued a check on a closed account as an installment payment for a pre-existing debt, his mortgage."). Rather, Plaintiff contends this conduct is not illegal as "there are no facts in evidence or allegations in the pleadings that tend to show Plaintiff attempted to receive anything of value." (Pl.'s Resp. to Mot. for J. 7:9–8:4, ECF No. 90). Contrary to Plaintiff's assertion, Mead's declaration of warrant indeed identifies Plaintiff's "attempt to unlawfully discharge debt" and obtain a "lien payoff" in exchange for a check drawn on a closed account. Had Plaintiff been successful, it is reasonable to conclude that Plaintiff would have wrongfully obtained $105,000.00 from Wells Fargo Bank, N.A. for the use of extinguishing Bank of America's mortgage on his property.[2] Under these circumstances, the Court finds that Mead had probable cause to believe Plaintiff attempted to violate NRS 205.0832. The Court therefore dismisses Plaintiff's malicious prosecution claims with prejudice.

---

[2] N.R.S. 205.0827 defines "obtain" as "to bring about or receive the transfer of any interest in property, or to secure performance of a service."

*2) Equal Protection Clause*

The Equal Protection Clause "commands that no State shall 'deny to any persons within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Williams v. Vidmar*, 367 F. Supp. 2d 1265, 1269–70 (N.D. Cal. 2005) (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)). To establish an equal protection violation, a plaintiff must show the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). In the context of the selective enforcement of a valid law, a plaintiff must show that others who are similarly situated have not been prosecuted, and that the prosecution is based upon an "impermissible motive." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1187 (9th Cir. 1995); *United States v. Kidder,* 869 F.2d 1328, 1335 (9th Cir.1989).

Plaintiff alleges that Mead maliciously prosecuted him based on his status as a "sovereign." (Am. Compl. ¶¶ 25, 26). To the extent Plaintiff's claim is premised upon his malicious prosecution allegations, this claim fails for the same reasons stated above. Furthermore, Plaintiff's status as a "sovereign" is not a suspect or quasi-suspect class under the equal protection clause. *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). Thus, in order to state an equal protection claim, Plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Elizondo v. City of Junction City*, 745 F. App'x 43, 44 (9th Cir. 2018) (citing *Squaw Valley Development Co. v. Goldberg,* 375 F.3d 936, 944 (9th Cir. 2004)).

Here, Plaintiff has put forth no allegations indicating that Mead treated similarly situated individuals differently than Plaintiff. Plaintiff has also put forth no allegations to show that Mead's conduct had a discriminatory effect or else was not rationally related to enforcement of Nevada's theft laws. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (citing

*United States v. Armstrong,* 517 U.S. 456, 465 (1996)) ("In order to prove a discriminatory effect, 'the claimant must show that similarly situated individuals . . . were not prosecuted.'"). Plaintiff has therefore failed to state an equal protection cause of action. As Plaintiff can potentially plead additional facts as to this claim, however, the Court dismisses Plaintiff's equal protection claim without prejudice.[3]

### *3) Presumption of Access*

To state a valid claim for denial of access to the courts, a plaintiff must allege an actual injury. *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973); *Barren v. Harrington*, 152 F.3d 1193, 1195 (9th Cir. 1998). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey,* 518 U.S. 343, 348 (1996) (citation and internal quotations omitted); *see also Alvarez v. Hill,* 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of access to legal materials).

Here, Plaintiff alleges that he has been deprived access to court documents, including "the warrant of arrest and declaration of arrest." (Am. Comp. ¶ 31). According to Plaintiff, he requested these documents from both the Justice Court of Las Vegas and LVMPD on February 1, 2018. (*Id.* ¶ 17). Although Plaintiff acknowledges that he has since received the declaration of arrest, Plaintiff asserts that he has "yet seen the warrant for [his] arrest, or been able to gain access to it." (*Id.* ¶ 32). Plaintiff has not alleged any actual prejudice from this purported deprivation, nor can the Court conceive of any. Indeed, the fact that Plaintiff has been able to litigate the instant action shows that there has been no frustration to Plaintiff's ability to present his claims. Furthermore, Plaintiff fails to address any of these deficiencies in his Response,

---

[3] Mead did not argue qualified immunity in the context of Plaintiff's equal protection claim, and therefore the Court declines to consider qualified immunity at this time. Mead is not foreclosed from raising this issue in future filings.

indicating that he has abandoned this claim. *See* Local Rule 7-2(d). The Court therefore dismisses Plaintiff's Presumption of Access claim with prejudice.

### *4) Municipal Liability*

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). To prevail on a § 1983 claim against a governmental entity, a plaintiff must prove: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Id.*

Plaintiff argues that LVMPD is vicariously liable for Mead's malicious prosecution pursuant to a custom, practice, and policy of facilitating its employee's to maliciously prosecute individuals. (Am. Compl. ¶ 42). This claim is predicated on Plaintiff's malicious prosecution claim and therefore fails for the reasons stated above. To the extent Plaintiff intended this claim to also arise from his Equal Protection claim, Plaintiff's conclusory allegations are insufficient to state a claim for municipal liability. *See Gardner v. Las Vegas Metro. Police Dep't*, No. 2:16–CV–01384–GMN–CWH, 2018 WL 1091977, at *3 (D. Nev. Feb. 28, 2018) (explaining that bare allegations are no longer sufficient to establish a claim for *Monell* liability). Furthermore, as discussed above, Plaintiff's claim is deficient because he has failed to establish an underlying constitutional violation. *See, e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 121 (9th Cir. 2010). The Court therefore dismisses this claim without prejudice.

### C. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although traditionally applied to motions under Rule 12(b)(6), the Ninth Circuit has recognized that leave to amend also applies to motions raised under Rule 12(c). *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

Here, the Court finds that Plaintiff may be able to plead additional facts to support his Equal Protection and Municipal Liability claims. Accordingly, the Court will grant Plaintiff leave to file a second amended complaint as to Mead. The Court notes, however, that Plaintiff should only file an amended complaint to the extent he can in good faith correct the deficiencies discussed herein. Any additional allegations must not be predicated on Mead's alleged malicious prosecution, as the Court has already resolved this matter.

Plaintiff shall file his amended complaint within twenty-one days of the date of this Order. Failure to file an amended complaint by this date shall result in the Court dismissing this action with prejudice.[4]

### IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Walsh's Motion to Dismiss, (ECF No. 23), is **GRANTED.** The Court dismisses Walsh from this action.

---

[4] Also before the Court is the Motion for Joinder, (ECF No. 60), filed by non-party Thomas Benson ("Benson"). In the Motion, Benson claims joinder is proper because he pleaded guilty in a criminal case involving multiple charges and one of which was the same charge at issue in this action. (*Id.*). The Court denies this Motion for lack of standing, failure to follow the local rules, and lack of merit. *See* Local Rule 7-2(d); Fed. R. Civ. P. 20.

**IT IS FURTHER ORDERED** that Mead's Motion for Judgment on the Pleadings, (ECF No. 84), is **GRANTED consistent with the foregoing.** Plaintiff shall have twenty-one days from the filing of this Order to file a second amended complaint as to his Equal Protection and Municipal Liability claims. Failure to file an amended complaint by this date shall result in the Court dismissing this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Answer, (ECF No. 25), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Motion for Joinder, (ECF No. 60), is **DENIED**.

**DATED** this 30 day of August, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge